IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DEANDRA CAMM WASHINGTON (individually and on behalf of minor children JD1 and JD2) and TRAVIS BALDWIN,<br><br>Plaintiffs,<br><br>v.<br><br>GASTON COUNTY NORTH CAROLINA, NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, CAROMONT REGIONAL MEDICAL CENTER, and DALLAS FIRE DEPARTMENT,<br><br>Defendants. | CIVIL ACTION NO: 3:25-cv-900<br><br>**COMPLAINT**<br><br>*for violations of 42 U.S.C. §§ 1983, 1985, and 1986 (civil rights), medical malpratice, and common-law duties*<br><br>**JURY TRIAL DEMANDED** |

## NATURE OF THE ACTION

This is a civil rights action brought pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, along with state law claims for medical malpractice, negligent investigation, intentional infliction of emotional distress, and common-law conspiracy. This case arises from Defendants' systematic conspiracy to conceal evidence and provide materially false official findings concerning the death of six-year-old Ariana Camm Baldwin, thereby depriving Plaintiffs of their constitutional rights to due process and accurate information regarding their child's death.

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under federal civil rights statutes.

2. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as the events giving rise to this action occurred in Gaston County, North Carolina.

## PARTIES

### *Plaintiffs*

4. Plaintiff Deandra Camm Washington is the mother of deceased Ariana Camm Baldwin and resides at 2116 Creek Bed Circle, Gastonia, NC 28054.

5. Plaintiff Travis Baldwin is the father of deceased Ariana Camm Baldwin and resides at 7231 Tanners Creek Drive, Huntersville, NC 28078.

### *Defendants*

6. Defendant North Carolina Department of Health and Human Services ("NCDHHS") is a state agency that manages the delivery of health and human-related services for North Carolina, including oversight of medical examiner functions. NCDHHS maintains its principal place of business at 1915 Health Services Way, Raleigh, NC 27607.

7. Defendant Gaston County North Carolina ("Gaston County") is a municipal corporation and political subdivision of North Carolina. Gaston County operates through various agencies including the Gaston County Police Department and maintains its principal place of business at 128 W. Main Ave., Gastonia, NC 28052.

8. Defendant CaroMont Regional Medical Center ("CRMC" or the "hospital") is a 476-bed medical center located at 2525 Court Drive, Gastonia, NC 28054.

9. Defendant Dallas Fire Department ("Dallas Fire" or "Dallas Fire and Rescue") is a local emergency response agency located at 209 W. Main Street, Dallas, NC 28034 and serving Dallas, North Carolina, within Gaston County, and was a first responder to the incident involving Ariana's death.

## FACTUAL BACKGROUND

*The Death of Ariana Camm Baldwin*

10. On May 25, 2024, six-year-old Ariana Camm Baldwin left home with excitement and joy, headed to her friend's house for a birthday sleepover over the Memorial Day weekend.

11. On May 26, 2024, Ariana was found unresponsive and was transported to Defendant CRMC, where she was pronounced deceased.

12. CRMC's Emergency Medical Services (EMS) personnel documented an external "contusion" located above the manubrium of the sternum, an injury consistent with blunt force trauma.

13. Ariana was transported to CRMC, where she was pronounced deceased on May 26, 2024.

*Medical Documentation and Cover-Up*

14. The EMS report clearly documented an "anterior" chest "contusion" above the manubrium of the sternum.

15. "Anterior," in context with "chest" means the front part of the chest wall, including the sternum (breastbone) and also structures like the ribs on the front of the body, referring to the area that is in front of the heart and lungs, as opposed to the back (posterior) part of the chest.

16. Despite this EMS documentation, Registered Nurse Lindsay Clawson at CRMC omitted the documented chest injury and instead indicates no injury noted to the chest in her hospital report.

17. CRMC's patient report documented "abdominal distention" and "blunt abdominal trauma," while simultaneously concealing the chest injury.

18. The hospital's FAST Ultrasound examination conclusively found blunt abdominal trauma.

19. On May 26, 2024, NCDHHS filed a medical examiner investigation report that omitted the EMS-documented chest "contusion."

20. On May 28, 2024, the Mecklenburg County Medical Examiner's Office, acting under NCDHHS authority, performed an autopsy on Ariana.

21. The autopsy report systematically omitted the documented chest "contusion" despite its clear documentation by EMS.

22. The medical examiner determined Ariana's cause of death to be "drowning" despite finding normal lungs without fluid and normal lung parenchyma.

23. The autopsy found no significant histopathology that would support a drowning conclusion.

### *Discovery of Concealed Injuries*

23. On May 28, 2024, when Ms. Washington viewed her daughter's body at Richmond Funeral Home, she observed extensive visible trauma including bruises on her face, and a dent in her forehead.

24. The funeral home director confirmed that Ariana had arrived at their facility in that condition, indicating these injuries were present during the autopsy but were not

Page 4 of 18
Case 3:25-cv-00900   Document 1   Filed 11/12/25   Page 4 of 18

documented.

25. Ms. Washington and her mother took photographs of the visible injuries to Ariana's face and head.

26. These photographs were subsequently provided to Gaston County Police Department detectives at phone number (704) 747-1660, but authorities never acted on them.

*Law Enforcement Investigation Failures*

27. Gaston County Police Department conducted an investigation into Ariana's death but failed to properly investigate the clear signs of blunt force trauma.

28. The case was closed as an accidental drowning without notifying Ms. Washington of the cases change in disposition.

29. When a meeting was scheduled for August 25, 2025, between Ms. Washington and law enforcement to review findings, it was cancelled August 19, 2025, after the department's learning of potential litigation, per a letter from J.E. Hamrick, Captain, Criminal Investigation, of the Gaston County Police Department.

30. Dallas Fire and Rescue, as local first responders, possessed crucial photographs, recordings, incident reports, and documentation from the scene but participated in the systematic concealment of evidence.

### *Pattern of Coordinated Misconduct*

31. All defendants systematically omitted the same documented injury (chest "contusion") from their respective reports, demonstrating coordination in the cover-up.

32. Independent medical consultant Konnie Ford's review identified shocking inconsistencies that cast serious doubt on the drowning determination.

33. The coordinated nature of the omissions across multiple agencies constitutes egregious,

nefarious, and shocking to the conscience conduct.

34. The EMS report implicated Dallas Fire & Rescue's non-administration of medical care to Ariana at the swimming-pool scene.

35. The hospital records showed abdominal blunt-force trauma.

36. In addition to this hospital record, the EMS report further reported a chest "contusion," while a dent in Ariana's forehead is also documented.

37. The forehead dent is consistent with a cerebral edema set out in the autopsy.

38. The hospital report showed trauma-induced cardiac arrest, which is distinct from drowning-induced cardiac arrest.

39. Dallas Fire & Rescue had immediate responsibilities on arrival to attempt rescue and life-saving medical aid, secure the scene, and immediately notify law enforcement and the county Medical Examiner.

40. Administering medical aid is Dallas Fire & Rescue core statutory function as *first responders*.

41. Dallas Fire & Rescue did not attempt rescue or life-saving medical care.

42. All the tests of Ariana in the hospital record and autopsy contained no drowning symptoms whatsoever.

43. Upon information and belief, the hospital staff came under the influence of improper pressure to conceal the records of all of the bodily harm and trauma, as well as the lack of evidence at all of any drowning.

## COUNT I: 42 U.S.C. § 1983 - CIVIL RIGHTS VIOLATION (NCDHHS)

34. Plaintiffs incorporate by reference all preceding paragraphs and allegations.

35. NCDHHS, acting under color of state law through its medical examiner functions,

deprived Plaintiffs of their constitutional rights to due process and accurate information regarding their child's death.

36. NCDHHS intentionally made materially false official findings by omitting documented evidence of blunt force trauma from the autopsy report.

37. The determination of drowning without proper pathological foundation violated clearly established constitutional rights.

38. NCDHHS's conduct was objectively unreasonable and caused direct harm to Plaintiffs' constitutional rights.

## COUNT II: 42 U.S.C. § 1983 - CIVIL RIGHTS VIOLATION (GASTON COUNTY)

39. Plaintiffs incorporate by reference all preceding paragraphs and allegations.

40. Gaston County, through its police department, acting under color of state law, deprived Plaintiffs of their constitutional rights to proper investigation and due process.

41. Despite receiving photographs showing extensive facial injuries and trauma, Gaston County failed to investigate and closed the case without notification.

42. Gaston County's deliberate indifference to clear signs of non-accidental trauma violated Plaintiffs' clearly established constitutional rights.

## COUNT III: 42 U.S.C. § 1983 - CIVIL RIGHTS VIOLATION (CRMC)

43. Plaintiffs incorporate by reference all preceding paragraphs and allegations.

44. CRMC, acting as a state actor in its emergency medical services capacity, participated in the deprivation of Plaintiffs' constitutional rights.

45. CRMC's systematic omission of EMS-documented injuries while documenting other trauma constituted deliberate concealment of evidence.

46. CRMC's conduct violated Plaintiffs' due process rights and right to accurate medical information.

## COUNT IV: 42 U.S.C. § 1983 - CIVIL RIGHTS VIOLATION (DALLAS FIRE)

47. Plaintiffs incorporate by reference all preceding paragraphs and allegations.

48. Dallas Fire, as local first responders acting under color of state law, participated in the deprivation of Plaintiffs' constitutional rights.

49. Dallas Fire possessed crucial evidence and documentation but participated in the conspiracy to conceal evidence of non-accidental trauma.

50. Dallas Fire's failure to ensure proper evidence preservation and documentation violated clearly established constitutional rights.

## COUNT V: 42 U.S.C. § 1985 - CONSPIRACY (NCDHHS)

51. Plaintiffs incorporate by reference all preceding paragraphs and allegations.

52. NCDHHS conspired with other defendants to deprive Plaintiffs of their constitutional rights through coordinated concealment of evidence.

53. The conspiracy involved systematic omission of the same documented injury from all official reports.

54. NCDHHS acted with the specific intent to deprive Plaintiffs of their constitutional rights.

## COUNT VI: 42 U.S.C. § 1985 - CONSPIRACY (GASTON COUNTY)

55. Plaintiffs incorporate by reference all preceding paragraphs and allegations.

56. Gaston County conspired with other defendants to conceal evidence and provide false official findings regarding Ariana's death.

57. The conspiracy involved coordination to close the case prematurely despite clear evidence of non-accidental trauma.

58. Gaston County's participation in the conspiracy was motivated by intent to deny Plaintiffs their constitutional rights.

## COUNT VII: 42 U.S.C. § 1985 - CONSPIRACY (CRMC)

59. Plaintiffs incorporate by reference all preceding paragraphs and allegations.

60. CRMC conspired with government defendants to conceal evidence through inadequate documentation and false reporting.

61. CRMC's participation in omitting the chest "contusion" while documenting other trauma demonstrates agreement to act unlawfully.

62. The conspiracy resulted in the deprivation of Plaintiffs' constitutional rights to accurate medical information.

## COUNT VIII: 42 U.S.C. § 1985 - CONSPIRACY (DALLAS FIRE)

63. Plaintiffs incorporate by reference all preceding paragraphs and allegations.

64. Dallas Fire conspired with other defendants to omit critical injury documentation from official reports.

65. As first responders with direct involvement in the emergency response, Dallas Fire participated in the coordinated effort to falsify records.

66. Dallas Fire's conspiracy activities were undertaken with intent to interfere with Plaintiffs' civil rights.

## COUNT IX: 42 U.S.C. § 1986 - NEGLECT TO PROTECT RIGHTS (NCDHHS)

67. Plaintiffs incorporate by reference all preceding paragraphs and allegations.

68. NCDHHS had actual knowledge of the EMS-documented chest "contusion" but failed to prevent the civil rights violations despite having the power to do so.

69. NCDHHS possessed the statutory authority to ensure accurate death investigations and could have prevented the false drowning determination.

70. Despite finding evidence inconsistent with drowning, NCDHHS failed to act to prevent the false certification.

## COUNT X: 42 U.S.C. § 1986 - NEGLECT TO PROTECT RIGHTS (GASTON COUNTY)

71. Plaintiffs incorporate by reference all preceding paragraphs and allegations.

72. Gaston County had actual knowledge of documented inconsistencies but failed to prevent the conspiracy despite having investigative authority.

73. Despite receiving photographs showing extensive facial injuries, Gaston County failed to act to prevent the false closure of the case.

74. Gaston County had the power to conduct a proper homicide investigation and prevent the conspiracy but neglected to do so.

## COUNT XI: 42 U.S.C. § 1986 - NEGLECT TO PROTECT RIGHTS (CRMC)

75. Plaintiffs incorporate by reference all preceding paragraphs and allegations.

76. CRMC had actual knowledge of the EMS-documented chest "contusion" but failed to prevent its omission from hospital records.

77. CRMC had institutional power to ensure accurate medical documentation and prevent the systematic concealment of injury evidence.

78. Despite documenting other trauma, CRMC failed to act to prevent the false narrative of accidental drowning.

# COUNT XII: 42 U.S.C. § 1986 - NEGLECT TO PROTECT RIGHTS (DALLAS FIRE)

79. Plaintiffs incorporate by reference all preceding paragraphs and allegations.

80. Dallas Fire had knowledge of scene conditions and evidence that contradicted an accidental drowning determination.

81. Dallas Fire possessed crucial photographs, recordings, incident reports, and documentation from the scene that could have prevented the false narrative.

82. Dallas Fire had the authority to ensure proper evidence preservation but failed to prevent the conspiracy.

# COUNT XIII: MEDICAL MALPRACTICE (NCDHHS)

83. Plaintiffs incorporate by reference all preceding paragraphs and allegations.

84. NCDHHS, through the medical examiner's office, had a professional duty to conduct thorough and accurate autopsy procedures.

85. The medical examiner's failure to document visible trauma, including the EMS-documented chest "contusion," fell below the standard of care required for death investigations.

86. The determination of drowning without proper pathological foundation constituted a breach of professional standards.

87. NCDHHS's medical malpractice directly contributed to the false conclusion regarding Ariana's death and deprived Plaintiffs of accurate medical information.

# COUNT XIV: MEDICAL MALPRACTICE (CRMC)

88. Plaintiffs incorporate by reference all preceding paragraphs and allegations.

89. CRMC had a duty to accurately document all injuries and trauma observed, particularly

in cases involving a deceased child.

90. The systematic omission of the EMS-documented chest "contusion" while documenting abdominal trauma fell below the standard of medical care.

91. CRMC's failure to follow proper documentation protocols and report suspected non-accidental trauma breached the standard of care.

92. CRMC's medical malpractice enabled the conspiracy to conceal evidence and contributed to the false official findings.

### COUNT XV: NEGLIGENT INVESTIGATION (GASTON COUNTY)

93. Plaintiffs incorporate by reference all preceding paragraphs and allegations.

94. Gaston County had a duty to conduct thorough investigation of Ariana's death, particularly given the clear signs of blunt force trauma.

95. Despite evidence of the chest "contusion" and other visible injuries, Gaston County failed to conduct adequate investigation.

96. The closure of the case as accidental drowning without proper investigation constituted negligent investigation.

97. Gaston County's negligent investigation directly harmed Plaintiffs by denying them accurate information about their daughter's death.

### COUNT XVI: NEGLIGENT INVESTIGATION (DALLAS FIRE)

98. Plaintiffs incorporate by reference all preceding paragraphs and allegations.

99. Dallas Fire, as first responders, had a duty to properly document and preserve evidence from the scene.

100. Dallas Fire's failure to ensure proper evidence documentation and preservation constituted negligent investigation.

101. Dallas Fire's negligent investigation contributed to the systematic concealment of evidence regarding Ariana's death.

### COUNT XVII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (GASTON COUNTY)

102. Plaintiffs incorporate by reference all preceding paragraphs and allegations.

103. Gaston County's conduct in dangling hope before Plaintiffs by promising meetings and then cancelling them after learning of litigation was extreme and outrageous.

104. For more than seventeen months, Gaston County intentionally provided Ms. Washington with the false hope of getting truthful answers concerning her young daughter, only to be stonewalled, opposed, resisted, and denied.

105. Gaston County's conduct was cruel, intentional, willful with wanton negligence and caused severe emotional distress to Plaintiffs.

106. The systematic deception and false hope caused ongoing severe emotional distress requiring medical treatment.

### COUNT XVIII: COMMON-LAW CONSPIRACY (ALL DEFENDANTS)

107. Plaintiffs incorporate by reference all preceding paragraphs and allegations.

108. All defendants entered into an agreement to conceal evidence and provide false information regarding Ariana's death.

109. The coordinated omission of the chest "contusion" from all official reports demonstrates the existence of the conspiracy.

110. Each defendant committed overt acts in furtherance of the conspiracy, including falsifying records and concealing evidence.

111. The conspiracy resulted in direct harm to Plaintiffs through the deprivation of accurate

information and denial of justice.

## COUNT XIX: NEGLIGENCE - FAILURE TO ADMINISTER MEDICAL CARE AGAINST DALLAS FIRE AND RESCUE DEPARTMENT

112. Plaintiffs incorporate by reference all preceding paragraphs and allegations.

*Duty of Care*

113. Dallas Fire and Rescue Department had immediate responsibilities on arrival to attempt rescue and life-saving medical aid, secure the scene, and immediately notify law enforcement and the county Medical Examiner.

114. Administering medical aid is Dallas Fire & Rescue core statutory function as first responders.

115. Dallas Fire and Rescue owed a duty of care to Ariana Camm Baldwin to provide immediate rescue and life-saving medical assistance upon their arrival at the swimming pool scene.

116. This duty arose from their statutory obligations as first responders and their specialized training and equipment for emergency medical care.

*Breach of Duty*

117. Dallas Fire & Rescue did not attempt rescue or life-saving medical care when they arrived at the pool scene.

118. The EMS report implicated Dallas Fire & Rescue's non-administration of medical care to Ariana at the swimming-pool scene.

119. Dallas Fire and Rescue's complete failure to attempt any rescue or life-saving medical procedures fell below the standard of care required of trained first responders.

120. Their failure to administer medical aid violated their core statutory functions and

Page 14 of 18
Case 3:25-cv-00900    Document 1    Filed 11/12/25    Page 14 of 18

professional duties as emergency responders.

### *Supporting Evidence of Medical Emergency*

121. The hospital records documented trauma-induced cardiac arrest, which is distinct from drowning-induced cardiac arrest.

122. All the tests of Ariana in the hospital record and autopsy contained no drowning symptoms whatsoever.

123. The EMS report documented a chest "contusion" indicating blunt force trauma.

124. A dent in Ariana's forehead is also documented and is consistent with a cerebral edema set out in the autopsy.

125. The hospital records showed abdominal blunt-force trauma.

### *Causation*

126. Dallas Fire and Rescue's failure to administer immediate medical care at the pool scene deprived Ariana of potentially life-saving treatment during the critical "golden hour" of emergency medical response.

127. Their negligence in failing to provide rescue attempts and medical aid contributed to the loss of precious time that could have been utilized for resuscitation efforts.

128. The failure to administer proper medical care at the scene contributed to the systematic concealment of the true nature of Ariana's injuries by allowing other agencies to control the narrative without proper first responder medical documentation.

### *Damages*

129. Dallas Fire and Rescue's negligence caused direct harm to Plaintiffs by:

    a. Depriving Ariana of potentially life-saving medical intervention at the scene;

    b. Contributing to the loss of crucial evidence regarding the true nature of her injuries;

c. Enabling the subsequent cover-up by failing to provide proper medical assessment and documentation at the scene; and

   d. Causing additional emotional distress to Plaintiffs who have since learned of this failure to provide care.

130. The negligent failure to administer care violated professional standards and contributed to the overall conspiracy to conceal evidence regarding Ariana's death.

131. Dallas Fire and Rescue's breach of their statutory duties as first responders directly contributed to the damages suffered by Plaintiffs, including their ongoing emotional distress and deprivation of accurate information about their daughter's death.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendant Dallas Fire and Rescue Department for their negligence in failing to administer medical care, including compensatory damages, punitive damages where applicable, and such other relief as the Court deems just and proper.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court further grant:

### I. DECLARATORY RELIEF

A. Declare that Defendants' conduct violated Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution;

B. Declare that Defendants conspired to deprive Plaintiffs of their constitutional rights in violation of 42 U.S.C. §§ 1985 and 1986;

C. Declare that the coordinated omission of documented injuries constituted a common-law conspiracy;

### II. COMPENSATORY DAMAGES

D. Award compensatory damages against all Defendants, jointly and severally, for the deprivation of constitutional rights, emotional distress, and costs of independent investigation necessitated by Defendants' false findings;

E. Award medical malpractice damages against NCDHHS and CRMC for professional negligence;

F. Award damages for negligent investigation against Gaston County and Dallas Fire;

G. Award damages for intentional infliction of emotional distress against Gaston County;

### III. PUNITIVE DAMAGES

H. Award punitive damages against individual defendants in their individual capacities for gross negligence and willful conduct;

### IV. INJUNCTIVE RELIEF

I. Order Defendants to produce all photographs, recordings, and documentation related to Ariana's death;

J. Enjoin Defendants from continuing to withhold public records;

### V. ATTORNEY'S FEES AND COSTS

K. Award attorney's fees and costs pursuant to 42 U.S.C. § 1988;

L. Award all costs of litigation, including expert witness fees;

### VI. ADDITIONAL RELIEF

M. Award pre-judgment and post-judgment interest;

N. Award such other relief as this Court deems just and proper.

### JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all issues so triable as a matter of right.

# CERTIFICATION

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Respectfully submitted,

/s/ Ronard Dixon, Jr.
Ronard Dixon, Jr., N.C. Bar # 49661
HALL & DIXON, PLLC
301 South McDowell Street
Suite 1103
Charlotte, N.C. 28204
Telephone: (704) 993-6825
E-mail: cdixon@halldixonlaw.com
*Local Counsel for Plaintiffs*

/s/ Amos N. Jones
Amos N. Jones, D.C. Bar # 974919
*Pro hac vice* admission pending
AMOS JONES LAW FIRM
1717 Pennsylvania Avenue NW
Suite 1025
Washington, D.C. 20006
Telephone: (202) 351-6187
Facsimile: (202) 478-1654
E-mail: jones@amosjoneslawfirm.com
*Counsel for Plaintiffs*

Dated: November 12, 2025